Rae Ziller v. Commissioner.
Ziller v. Commissioner
Docket No. 14437.
United States Tax Court
1948 Tax Ct. Memo LEXIS 61; 7 T.C.M. (CCH) 797; T.C.M. (RIA) 48227; October 25, 1948
Ralph J. Gutgsell, Esq., 105 W. Adams St., Chicago, Ill., for the petitioner. William Schwerdtfeger, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax for the calendar year 1943. Deficiency was determined in the amount of $5,245.40. The questions presented are whether the petitioner is liable for the income of her husband, after filing of joint return by her with her husband, and whether the Commissioner erred in increasing the amount of income returned in such joint return, to arrive at the deficiency determined; also whether petitioner is liable for a 5 per cent penalty under section 293 (a) of the Internal Revenue Code. The petitioner and her husband, G. W. Ziller, residents of Springfield, *62 Illinois, filed joint returns, signed by both, for the years 1942 and 1943 with the collector for the eighth district of Illinois. The return for the year 1942 is involved because of the "tax forgiveness" feature under section 6 of the Current Tax Payment Act of 1943. The return for 1942 reports $2,300 income from "Salary, wages and compensation for personal services," claims no dependents, and reports tax of $172. The return for 1943 reports income of $1,612 "from partnerships; fiduciary income; and other income," claims personal exemption of $1,200, and credit for dependent, $350, leaving income of $62, against which earned income credit of $161.20 is claimed, resulting in no tax payable. The Commissioner in the deficiency notice increases the income for 1943 from $1,612 to $15,000 with the explanation "As a result of a field investigation taxpayers' net profit from business was determined to be $15,000.00 instead of $1,612 as reported; an increase of $13,388.00." The deficiency notice showed the adjustments to income reported for 1942 as an increase of the $2,300 reported, by $12,700, to $15,000 with the same explanation as above stated for 1943 with the resultant deficiency of *63 $3,946. The petitioner and her husband resided together during 1942 and 1943 in Springfield, Illinois, living in a rented house. She had no income of her own. His primary source of income was that of a professional lobbyist. He engaged to some extent in selling automobiles and farm equipment as a commission salesman and received income from a farm. He was a very large man, weighing about 500 pounds, and his clothes were expensive, suits and shirts having to be specially made. He paid $10 or $12 a piece for shirts. He suffered from diabetes and was under a doctor's care. He took insulin and still takes it twice a day. His food had to be special because of his diabetes and grocery bills were high. He drove a car, having purchased a new Dodge car in 1943, turning in a Cadillac. Substantial automobile expenses were incurred by him. When the matter of the tax liability of the petitioner and her husband was being investigated he stated that his living expenses would run between $10,000 and $15,000 a year. He maintained a suite of rooms at the Abraham Lincoln Hotel in Springfield for the purpose of entertaining various people. He also entertained at his home. Among those entertained were *64 members of the state legislature. Liquor was served. Rental of $75 a month was paid for the home and public utilities cost about $15 or $20 a month. The evidence in this case is in a very unsatisfactory condition. It consists solely of the evidence of petitioner, who plainly showed that she knew little about her husband's activities, and the evidence of a deputy collector who interviewed her husband. She had a tendency to testify positively about things as to which it developed that she knew little or nothing. Thus, she stated that her husband had no business, but later stated that there were occasions when he was conducting business when she was not present and that she would not know whether he was obtaining money and that she would not necessarily know that he was not receiving money from activities as a lobbyist. She testified that her husband borrowed over a course of years, including 1942 and 1943, over $100,000, but she was never able to suggest more than two names of persons from whom borrowing was done. She stated that she never saw any promissory notes change hands, but later said that her husband gave people notes for money and that she would get them out of a book of *65 notes and give them to him. She never actually participated in the conversations in which her husband borrowed money and never heard any of the conversations, and knew he borrowed only because he would get money, would have it after he went to see somebody about it. She stated that she did not know what her husband did "up town." He kept some papers in a drawer. He was required, while under indictment, to bring them to Court and he never got them back, although he tried. He filed a bankruptcy petition at Springfield. He did not keep any records and did not furnish to the deputy collector a list of people from whom he borrowed. He did produce some notes. He would not state to the deputy collector where he got equipment to sell or to whom it was sold or the cost or selling price. He was vague in practically all of his answers. G. W. Ziller did not testify for the petitioner. It is obvious, we think, that on such a record we can not say that the Commissioner erred in increasing the joint income which should have been reported by the petitioner and her husband to $15,000, and we hold that no error is shown in that respect. The respondent by affirmative allegations in his answer invokes *66 section 293 (a) of the Internal Revenue Code and the 5 per cent penalty, contending that some part of the deficiency is due to negligence or intentional disregard of rules and regulations. As to this item the burden is, of course, upon him. We can only conclude from the record before us that he has met that burden. The petitioner's husband had income as a lobbyist. Though the amount thereof does not satisfactorily appear from the evidence it does appear affirmatively that he spent $10,000 to $15,000 a year and the petitioner's attempt to explain this as borrowing is completely unsatisfactory. Such expenses and the business in which the husband was engaged are sufficient indication, in our opinion, that income was not reported either through negligence or intentional disregard of regulations. The fact that round numbers were reported as income, $2,300 for 1942 and $1,612 for 1943, without any details or explanation, also indicates, we think, such negligence and disregard. The petitioner under section 51 (b) of the Internal Revenue Code is jointly and severally liable with her husband. She does not argue otherwise. We conclude and hold that *67 the petitioner has failed to show error on the part of the respondent in increasing the income reported and in asserting the deficiency, and that under section 293 (a) the petitioner is liable for the 5 per cent penalty there provided. Decision will be entered under Rule 50.